IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM MORRISE RIGOLE II,       )     Civil No.: 6:15-cv-02072-JE
                              )
           Plaintiff,          )     OPINION AND ORDER
                              )
          v.               )
                              )
NANCY A. BERRYHILL,[1]         )
Acting Commissioner of Social Security,  )
                              )
          Defendant.     )
_____  )

Katherine L. Eitenmiller
Mark A. Manning
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

        Attorneys for Plaintiff

Billy J. Williams, U.S. Attorney
Janice E. Hébert, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Michael S. Howard
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 20, 2017, and is therefore substituted as the Defendant in this action pursuant to Fed. R. Civ. P. 25(d).

JELDERKS, Magistrate Judge:

Plaintiff William Rigole II brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act). For the reasons that follow, the Commissioner's decision is reversed and this case remanded for further proceedings.

## Procedural Background

Plaintiff filed his application for a period of disability and DIB on July 13, 2014, alleging disability as of March 9, 2014. Tr. 17. The Commissioner denied his application initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). Tr. 111–12. An administrative hearing was held on June 2, 2015, before ALJ John Michaelsen. Tr. 14–30. In a decision dated June 11, 2015, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Tr. 14–30. The ALJ's decision became the final decision of the Commissioner on September 9, 2015, when the Appeals Council denied Plaintiff's request for review. Tr. 1–3. Plaintiff now appeals to this Court for review of the Commissioner's final decision.

## Factual Background

Plaintiff was born in 1980 and was 33 years old on the date he alleges he became disabled. Tr. 75–76. Plaintiff is a military veteran and served in the Army from 1999 to 2004 during Operation Iraqi Freedom. Tr. 276, 281–83. After being honorably discharged from the Army, Plaintiff attended two years of vocational rehabilitation training through the Veteran's Administration ("VA"). Tr. 281, 283. He has past relevant work as a U.S. Army infantryman and

a trauma surgical technician. Tr. 164, 191. Plaintiff alleges disability due to post-traumatic stress disorder (PTSD), vision impairment, and diabetes. Pl.'s Br. at 1; Tr. 331–33, 510.

**<u>Disability Analysis</u>**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520. The five step sequential inquiry is summarized below, as described in *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

<u>Step One.</u> The Commissioner determines whether the claimant is engaged in substantial gainful activity. A claimant who is engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

<u>Step Two.</u> The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have any such impairment is not disabled. If the claimant has one or more severe impairment(s), the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

<u>Step Three.</u> Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has an impairment that meets a listing is presumed disabled under the Act. If the claimant's impairment does not meet or equal an impairment listed in the listings, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

<u>Step Four.</u> The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If

the claimant demonstrates he or she cannot do past relevant work, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that claimant is able to do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE), or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant is able to do, the claimant is not disabled. If the Commissioner does not meet the burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four of the sequential inquiry, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

## **ALJ's Decision**

As an initial matter, the ALJ found that Plaintiff met the insured status requirements through December 31, 2018.

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 9, 2014, the alleged onset date. Tr. 19.

At the second step, the ALJ found Plaintiff's PTSD was a severe impairment. Tr. 19.

At the third step, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity (RFC). He found Plaintiff retained the functional capacity to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: simple, repetitive, routine tasks requiring no more than occasional interaction with coworkers and the general public.

Tr. 21. In making his determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. Tr. 22.

At the fourth step of the disability analysis, the ALJ found Plaintiff was unable to perform any of his past relevant work. Tr. 24.

At the fifth step, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited battery stacker, cleaner II, and basket filler as examples such work. *Id.* Having concluded that Plaintiff could perform other work, the ALJ found Plaintiff had not been under a disability within the meaning of the Act since March 9, 2014.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 771 (9th Cir. 1986). The Commissioner's decision must be upheld if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039–40.

## Discussion

On appeal, Plaintiff asserts the ALJ erred by: 1) failing to include the limiting effects of Plaintiff's vision impairment in the hypothetical to the VE and the RFC determination; 2) failing to properly evaluate medical opinion evidence; 3) failing to provide clear and convincing reasons supported by substantial evidence to discredit Plaintiff's symptom testimony; and 4) improperly discrediting lay witness evidence.

## I. Step Two Findings

Plaintiff argues the ALJ erred in failing to find Plaintiff's keratoconus was a severe impairment at Step Two, and as a result, the hypothetical posed to the VE and the ALJ's RFC determination were defective. The Commissioner argues the ALJ did not err because Plaintiff's vision could be corrected, and because a reasonable person could find his eye condition caused no significant limitation on his ability to perform work-related activities. Def.'s Br. at 2–5.

### A. Standards and Analysis

An impairment or combination of impairments is considered "severe" at Step Two if it

significantly limits a claimant's ability to perform basic work activities. SSR 96–3p. An impairment is not severe only if it is a slight abnormality that has no more than a minimal effect on the ability to do such activities. *Id.* The "severe impairment" analysis is a "*de minimis* screening device to dispose of groundless claims.*" Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir.2005) (quoting SSR 85–28).

The ALJ asserted that Plaintiff's eye condition "has been address [sic] successfully through treatment, and that with appropriate corrective lenses, he has normal vision." Tr. 20. The ALJ also found that the medical record showed that Plaintiff's "treating sources believed [he] would . . . have excellent vision with use of appropriate corrective eyewear." Tr. 20.

Plaintiff has been diagnosed with bilateral keratoconus.[2] He underwent a left eye corneal transplant in 2001. Tr. 250, 42. In April 2011, he underwent left eye cataract surgery with "excellent result." Tr. 244-45. At his post-operative exam, Plaintiff demonstrated 20/30 vision in his left eye with squinting but 20/400 in his right eye. Tr. 242. In June 2011, he reported very blurry near vision and an inability to read anything up close. Tr. 238. He underwent a Yag laser procedure on his left eye. Id. Post-operative notes indicate that Plaintiff could not tolerate contacts and continued to use his right eye to read. Tr. 237.

In early 2014, Plaintiff reported that his sight was "very visually impaired" and that he could no longer perform his job because of his poor vision. Tr. 398, 400. He continued to be intolerant of hard contact lenses. In March 2014, Plaintiff underwent a right eye corneal

---

[2] Keratoconus is an eye disease that changes the structure of the cornea from round to cone shaped, thins the cornea and results in the eye bulging out, causing vision problems. U.S. National Library of Medicine, *Keratoconus*, MedlinePlus, https://medlineplus.gov/ency/article/001013.htm

transplant. Tr. 376-87, 402-07. His uncorrected visual acuity improved to 20/350 on the right

but he continued to have difficulties with his near vision and was unable to return to work. Tr.

371-72; 364; 367. In August 2014, Plaintiff was fitted with scleral contact lenses. Tr. 350-53. By

September 2014, Plaintiff had been terminated from his job due to his vision impairment. Tr. 39,

41, 348. He described significant discomfort from a trial of Rigid Gas Permeable lenses but had

not yet received the eyeglasses he had ordered in June of that year. Tr. 348. His corrected visual

acuity was 20/150 on the right and 20/50 on the left. Tr. 349. It was recommended that he order

new contact lenses. In December 2014, Plaintiff's corrected visual acuity was measured at

20/200 on the right and 20/70 on the left. Tr. 501. He reported monocular and binocular diplopia

with and without eyeglasses. Tr. 500. Plaintiff was once again fitted with a set of scleral lenses.

Tr. 497, 499-500.

In January 2015, Plaintiff reported ongoing diplopia. He developed subepithelial

infiltrates and in February 2015 was instructed not to wear contact lenses. Tr. 491. He showed

significant improvement by early March 2015. His uncorrected visual acuity was measured at

20/100-2 on the right and 20/250 on the left. Tr. 488-89. In April 2015, Plaintiff reported

continued discomfort that was preventing him from wearing contact lenses. Tr. 485. He was

fitted for new scleral lenses and instructed to limit his use of the lenses to one hour the first day

then increase by one hour per day not to exceed four hours of wear per day until his follow-up

appointment. Id. There are no further ophthalmological records after April 6, 2015.

Substantial evidence in the medical record demonstrates that during the period at issue,

Plaintiff's vision continually fluctuated; that he experienced diplopia with and without

eyeglasses; and, just two months before the hearing before the ALJ, Plaintiff had to be refitted

for contact lenses and could not successfully wear those lenses on a sustained basis. While the

use of appropriate corrective eyewear may provide Plaintiff with "normal vision," there is no evidence in the record supporting the conclusion that Plaintiff's medical providers were at any point during the relevant period, able to provide Plaintiff with "appropriate corrective eyewear" that he could use for a sustained period. Thus, neither the ALJ's finding that Plaintiff had "normal vision" nor his conclusion that Plaintiff's vision impairments caused no more than a minimal effect on his ability to work are supported by the record. *See* SSR 96–3p; *see also,* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §2.00(A)(5)(c) ("We will use the visual acuity measurements obtained with a specialized lens only if you have demonstrated the ability to use the specialized lens on a sustained basis.")(emphasis added).

**B. Effect of Error**

An ALJ's error in the severity determination at Step Two is harmless where the ALJ resolves Step Two in a claimant's favor and considers any limitations posed by the omitted impairment in his subsequent evaluation. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir.2007). Having concluded that the ALJ erred at Step Two in omitting Plaintiff's vision impairment, the Court must then turn to the question of whether that error resulted in prejudice to Plaintiff in the subsequent steps of the sequential evaluation process. *See Burch*, 400 F.3d at 682.

The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The RFC is the maximum a claimant can do despite his limitations. 20 C.F.R. § 404.1545. The ALJ must consider the "total limiting effects" of all of a claimant's medically determinable impairments, both severe and non-severe, in formulating the claimant's RFC. 20 C.F.R. § 404.1545(a)(2), (e). The ALJ must base the RFC determination on all the relevant evidence in the record as a whole. 20 C.F.R. § 404.1520(e); SSR 96-8p. Accordingly, the ALJ must consider

all medical source opinions and address any conflict between a medical opinion and the RFC assessment. SSR 96-8p.

Here, the ALJ determined that Plaintiff had the capacity to perform a full range of work at all exertional levels and only included limitations to simple, repetitive, routine tasks requiring no more than occasional interaction with coworkers and the general public. Tr. 21. The ALJ assessed <u>no</u> limitations related to Plaintiff's visual impairments as part of his RFC determination. In assessing an RFC, an ALJ is bound to consider limitations and restrictions imposed by *all* of an individual's impairments, even those deemed not severe. *Burch,* 400 F.3d at 683 (citing SSR 96-8p); 20 C.F.R. § 404.1545(a)(2).

In addition, in order to be accurate, an ALJ's vocational hypothetical presented to a VE must set out all of a claimant's impairments and limitations. *E.g., Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir.1984). The ALJ's depiction of a claimant's limitations must be "accurate, detailed, and supported by the medical record." *Tackett,* 180 F.3d at 1101. If the assumptions set out in the hypothetical are not supported by the record, a VE's conclusion that a claimant can work does not have evidentiary value. *Gallant,* 753 F.3d at 1456. As with his RFC determination, the ALJ's hypothetical to the VE also omitted limitations that were supported by substantial evidence in the record.

The ALJ's finding that Plaintiff's vision impairment was not severe is not supported by substantial evidence and was, thus, error. Furthermore, the ALJ's RFC assessment and the hypothetical posed to the VE did not consider or incorporate any effects of Plaintiff's visual impairments. Therefore, as a result of the ALJ's error at Step Two, the ALJ's analyses at Step Four and Five were not supported by substantial evidence in the record and were not based upon

proper legal standards. The ALJ's error was not harmless and the Commissioner's decision must be remanded.

## II. <u>Evaluation of Medical Evidence</u>

Plaintiff asserts that the ALJ improperly discounted his Veterans' Affairs (VA) disability rating and the opinion of his treating psychiatrist, Dr. Higginbotham.

### A. Plaintiff's VA Disability Rating

Plaintiff was rated by the VA as 70% disabled due to combat-related PTSD, and 30% disabled due to keratoconus, for a total disability rating of 80%. Tr. 263–267. Plaintiff asserts that the ALJ failed to provide a persuasive, specific, and valid reason for discrediting his VA disability rating.

An ALJ must ordinarily give great weight to a VA determination of disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). "While a VA disability decision 'does not necessarily compel the SSA to reach an identical result, the ALJ must consider the VA's findings in reaching his decision' because of the similarities between the VA disability program and the Social Security disability program." *Hiler v. Astrue*, 687 F.3d 1208, 1211 (9th Cir. 2012) (quoting *McCartey*, 298 F.3d at 1075). However, because the VA criteria for determining disability are not identical to those of the SSA, "the ALJ may give *less weight* to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (emphasis in original).

In this case, the ALJ gave "little weight" to the VA's disability determination. Tr. 24. First, the ALJ stated that, "[t]here is no direct correlation between the assessed percentage and functional limitations and therefore the rating is not indicative of particular restrictions." Tr. 24. This is no more than a generalized observation of the fact that the VA and SSA disability

ratings differ in their disability calculation. This different standard allows an ALJ to give less weight to the VA's determination if he provides persuasive, specific, valid reasons for doing so that are supported by the record, but it is not, in itself, a sufficient reasons to discount the VA's determination. *See McCartey*, 298 F.3d at 1076; *see also Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 695 (9th Cir. 2009)("Insofar as the ALJ distinguished the VA's disability rating on the general ground that the VA and SSA disability inquiries are different, her analysis fell afoul of *McCartey."*); *Underhill v. Berryhill*, 685 F. App'x. 522 (9th Cir. 2017) (unpublished) (concluding that the fact that the rating system used by the VA is not the same as the system used by the Social Security Administration, is not a valid reason to discount the VA's disability rating).

The ALJ then continued, "it is unclear why the claimant received such a high rating in light of his continued work activity and the lack of a treatment record." To the extent this statement was intended to be a reason for discounting the VA's determination, it was neither persuasive nor valid. First, the VA rating predates Plaintiff's alleged onset date by over a year. Tr. 263. Second, the record reflects that Plaintiff was able to work despite his PTSD symptoms because of the accommodations provided by his employer. Tr. 59-60. Plaintiff's symptoms were exacerbated subsequent to the VA's determination and Plaintiff's employer was ultimately unable to accommodate Plaintiff's increased vision impairment. Tr. 39, 41, 348. This is consistent with Plaintiff's claim, which alleges an onset date of March 2014. Third, the VA determination clearly iterates the evidence on which it was based, which included both service-related and private medical records dating from 1999 to March 2013. Tr. 263-64. Finally, as Plaintiff correctly points out, VA disability compensation is payable for partial disability and disabled veterans may receive disability compensation while continuing to work. *See* 38 C.F.R.

§§4.1, 4.15, 4.16, 4.25. Thus, this purported basis for rejecting the VA's determination was insufficient.

The ALJ's final basis for discounting the VA's determination was that "the hearing decision residual functional capacity is supported by the medical evidence of record and the function reports . . . ." Tr. 24. This statement runs contrary to Ninth Circuit law which disapproves of the reverse logic such reasoning represents. *Cf. Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017)(holding credible evidence must be taken into account when assessing a claimant's RFC and cannot be discredited because it is inconsistent with that RFC). The ALJ erred by discrediting the VA's determination on the grounds that it was inconsistent with the ALJ's RFC determination.

The ALJ erred by failing to provide persuasive, specific, valid reasons supported by the record for discounting the VA's disability determination.

**B. Dr. Higginbotham**

As noted above, Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of treating physician, Dr. Robert Higginbotham, MD.

VA Staff Psychiatrist, Dr. Higginbotham, began treating Plaintiff in January 2014. Plaintiff reported anxiety, depression, insomnia, nightmares and stress exacerbated by his divorce. Tr. 308. He had previously tried to avoid psychiatric medications for his PTSD but could no longer control his symptoms without medication. Id. Dr. Higginbotham prescribed alprazolam (Xanax) for anxiety and fluoxetine for depression. Tr. 309. Plaintiff was also prescribed prazosin for PTSD related nightmares. Tr. 308. Plaintiff reported that the fluoxetine put him in a "fog" and wasn't beneficial and that the alprazolam made him sleepy. Tr. 307. Dr. Higginbotham replaced fluoxetine with bupropion, which provided initial but not lasting

improvement. Tr. 302, 305, 306, 307. Dr. Higginbotham subsequently discontinued bupropion and prazosin but increased Plaintiff's alprazolam dosage, and later added venlafaxine for mood stabilization. Tr. 293-94, 303, 526.

During a visit with Dr. Higginbotham in October 2014, Plaintiff reported feeling depressed, hopeless, and having little interest in doing things; experiencing PTSD related nightmares; and constantly feeling on guard, watchful, or easily startled. Tr. 526-27. Dr. Higginbotham's notes over the treatment period remark on Plaintiff's anxiety, depression, and subdued mood and the complications surrounding his corneal surgery and recovery. 293-94, 302, 307, 308, 309, 526.

In May 2015, Dr. Higginbotham completed a questionnaire provided by Plaintiff's attorney. In his responses he opined that Plaintiff's PTSD, anxiety, and depression decreased his ability to concentrate and work. Tr. 531. He further opined that Plaintiff's poor vision and anxiety would interfere with his ability to sustain simple, low-stress work that required no public interaction or close coordination with supervisors or co-workers. Id.

In July 2015, Dr. Higginbotham again completed an attorney-provided questionnaire. He noted Plaintiff's diagnoses of PTSD, diabetes, and bilateral keratoconus. He described Plaintiff's symptoms as including, depression, anxiety, nightmares, insomnia and intrusive thoughts, and opined that Plaintiff was not able to work due to his PTSD and vision problems. Tr. 539. As part of his response, Dr. Higginbotham also completed a Mental Residual Functional Capacity (MRFC) Questionnaire. Tr. 540-544. He assessed marked limitations in Plaintiff's abilities to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptom; and interact appropriately with the general public. He assessed

moderate limitations in Plaintiff's ability to work in coordination with or proximity with others without being distracted; get along with co-workers or peers; and accept instructions and respond appropriately to criticism from supervisors. Id. The MRFC assessment was completed after the hearing before the ALJ but was considered by the Appeals Council. Tr. 2-5.

The ALJ gave Dr. Higginbotham's May 2015 opinion little weight. He cited Dr. Higginbotham's failure at that time to complete a MRFC form, the lack of specificity in his responses and Dr. Higginbotham's position as Plaintiff's psychiatric, not physical, treatment provider as reasons for discounting his opinion.

**1. Applicable Standards**

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians. *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 (9th Cir.1989). Accordingly, an ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions. *Lester*, 81 F.3d at 830–31. An ALJ must provide "specific and legitimate reasons," which are supported by substantial evidence in the record, for rejecting an opinion of a treating

physician which is contradicted by the opinions of other doctors. *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir.2001) (citing *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998)).

An ALJ need not accept a doctor's medical opinion that "is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005) (citing *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir.2001)). However, if a treating physician's medical opinion regarding the nature and severity of a claimant's impairments is not inconsistent with other substantial evidence in the record, and is well-supported by medically acceptable clinical findings, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "[E]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight ... even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir.2007)).

**2. Analysis**

The Commissioner argues that a "reasonable person" could agree that Dr. Higginbotham's opinion was entitled to little weight. Def. Brief. at 8. This, of course, is not the standard that governs the evaluation of medical opinion evidence. The Commissioner also asserts that the ALJ's bases for discounting Dr. Higginbotham's opinion were "reasonable" and "adequate." Def. Brief at 9. Finally, the Commissioner argues that the MRFC form that Dr. Higginbotham completed in July 2015 is "not compelling" because it was submitted after the ALJ hearing and stated that Plaintiff's limitations were present only as of July 2015. The Commissioner's arguments are unpersuasive.

First, an ALJ's reasons for discrediting the opinion of a treating physician, even when contradicted by another physician, are held to a higher standard than "reasonable" and "adequate." The ALJ was required to provide specific and legitimate reasons supported by substantial evidence. *Rollins,* 261 F.3d at 856. Thus, the basic premise of the Commissioner's argument is inaccurate.

Second, although Dr. Higginbotham's May 2015 responses were brief, the subsequent July 2015 opinion and MRFC assessment provided specificity, assessed functional limitations, and referred to the record upon which he based his opinion. Tr. 538-544. This assessment was sought prior to the hearing before the ALJ, was timely submitted to the Appeals Council for review and is consistent with Dr. Higginbotham's treatment notes and the overall record. The Commissioner's argument that the July 2015 opinion assesses limitations present only as of July 2015 is also unavailing. Dr. Higginbotham both dated the entire assessment and listed Plaintiff's onset date as July 8, 2015. However, he also indicated that Plaintiff's limitations had lasted or were expected to last 12 continuous months and that he based his opinion on Plaintiff's record dating back to 1999. These remarks, taken together with the fact that Dr. Higginbotham had opined more than a month previously that Plaintiff's anxiety and poor vision would interfere with his ability to perform basic work functions, direct the common sense conclusion that Dr. Higginbotham mistakenly wrote July 2015 as the onset date.

Finally, the ALJ's assertion that Dr. Higginbotham's opinion should be discredited because he was Plaintiff's mental health, not physical, treatment provider is also unavailing. The Agency's regulations provide for just such a situation and explain how the Agency will determine how much weight to give a treating source's opinion regarding an impairment for which that source is not treating the claimant. 20 C.F.R. § 404.1527(c)(2)(ii)(2017)("For

example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source."). Dr. Higginbotham wrote his opinion after he had treated Plaintiff for over 16 months, including throughout his corneal transplant surgery and recovery. Tr. 62, 293-94, 301-10, 506, 516-18. His notes reflect his observations of Plaintiff's increased symptoms due to complications arising from his corneal transplant and document that Plaintiff could not return to work due to a combination of vision loss and mental impairment. Tr. 293, 302, 517, 525. Under the circumstances, the fact that Dr. Higginbotham was Plaintiff's mental health provider was not a specific and legitimate reason for discrediting his opinion.

In sum, the ALJ erred by failing to provide specific and legitimate reasons which were supported by substantial evidence in the record for rejecting Dr. Higginbotham's opinion.

### III. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons, supported by substantial evidence, for finding that his subjective symptom allegations were not fully credible.

#### A. Standards

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so."

*Garrison*, 759 F.3d at 1014–15 (quoting *Smolen*, 80 F.3d at 1281). "The clear and convincing standard is the most demanding required in Social Security cases." *Id.* at 1015 (citations omitted). Therefore, an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d at 722.

At the time of the ALJ's decision, Social Security Ruling ("SSR") 96-7p was in effect and explained the factors to be considered in assessing credibility. In March 2016, that ruling was superseded by SSR 16-3p, *available at* 2016 WL 1119029 (Mar. 16, 2016). Under SSR 16-3p, the term "credibility" is eliminated from the Agency's sub-regulatory policy and ALJs are not tasked with making an overarching credibility determination, but must instead assess whether subjective symptom statements are consistent with the record as a whole. Id. SSR 16-3p clarifies that "subjective symptom evaluation is not an examination of an individual's character." Id.

The ALJ's decision in this case was issued before SSR 16-3p became effective and the Ninth Circuit has not expressly ruled on whether SSR 16-3p applies retroactively. I have previously held that SSR 16-3p is a clarification of sub-regulatory policy rather than a new policy and thus is appropriately applied retroactively. *See, e.g., Hanson v. Colvin*, No. 3:15-cv-01974-JE, 2017 WL 2432159, at *7 (D. Or. May 2, 2017) (applying SSR 16-3p retroactively)(citing *Smolen*, 80 F.3d at 1281 n. 1); *Kunkle v. Colvin*, No. 6:14-cv-01605-JE, 2016 WL 8229041, at *4 (D. Or. Dec. 13, 2016) (same); *Andre v. Colvin*, 6:14-cv-02009-JE (D. Or. Oct. 13, 2016) (same).

Recently, the Ninth Circuit determined that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual

has a medically determinable impairment(s) that could reasonably be expected to produce those

symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent

(quoting SSR 16-3p)(brackets in the original).[3]

In evaluating a claimant's subjective symptom testimony, an ALJ must consider the

entire record and several factors, including the claimant's daily activities; the location, duration,

frequency, and intensity of the claimant's pain or other symptoms; medications taken and their

effectiveness; treatment other than medication; measures other than treatment used to relieve

pain or other symptoms; and "other factors concerning the individual's functional limitations and

restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). If substantial evidence

supports the ALJ's determination, it must be upheld, even if some of the reasons cited by the

ALJ are erroneous. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

## B. Analysis

Plaintiff testified that he is unable to work because of the combination of his PTSD

symptoms, anxiety and vision impairments. Tr. 45–46. He testified that his vision had worsened

to the point that he could no longer see sutures or read labels and his employer terminated his

employment as a trauma surgical technician because of his poor vision. Tr. 39, 40, 41. He cannot

tolerate contact lenses and cannot wear eyeglasses until more sutures are removed from his eyes.

Tr. 57-58. Both his near and distance vision are poor and he does not drive because he has

difficulty reading road signs. Id.

---

[3] Contrary to the Commissioner's assertion, the Ninth Circuit's unpublished opinion in *Garner v. Colvin*, 626 F. App'x 699, 701 (9th Cir. 2015)(unpublished) does not stand for the proposition that SSR 16-3p only applies to ALJ decisions from March 16, 2016 onwards. *Garner* addressed a different Social Security Ruling and did not make a determination as to whether that new ruling was a clarification of existing sub-regulatory policy. The Ninth Circuit rejected the plaintiff's argument that it was error for the ALJ to fail to comply with the new ruling both because the new ruling wasn't in effect at the time of the ALJ's decision and the plaintiff had waived the issue by failing to raise it in the court below. *Id.* In any event, the ALJ's findings here fail to pass muster irrespective of which standard governs. See Def. Br. 6 n.1.

At the time of the hearing Plaintiff was living with his ex-wife and his two children because he "had nowhere else to go" and his ex-wife was willing to take him in. Tr. 47. He avoids helping his children with homework or going to parent-teacher conferences because he's "not right for that." Tr. 48. He initially tried to help with cleaning and chores but no longer does them because of eye irritation. Tr. 49. In the past he was able to go to the store by himself but the combination of his worsening vision and PTSD symptoms have stopped him from doing so. He now goes with his ex-wife and only at certain times when there will be fewer people around. Id. He attended church in the past for marriage counseling but has since stopped. Tr. 53. His life "revolves around [his] medication. Tr. 51.

He experienced PTSD symptoms prior to March 2014 but his employer accommodated him by giving him lighter cases when Plaintiff was stressed. Tr. 59-60. His symptoms worsened "severely" over time and he sought help when his family left him. Tr. 61. He couldn't tolerate medication for night terrors so he takes Xanax so that he won't remember the dreams. Tr. 62. The medications he takes make him very fatigued and he naps for two or three hours during the day. Tr. 65-66. His anxiety level is "unbelievable" and while medication helps when he is alone, his severe anxiety returns when he is out with the public. Tr. 45-46. He has tried multiple forms of therapy and counseling but doesn't feel like they have helped with his symptoms. Tr. 46, 56.

Because Plaintiff's medically determinable impairments could reasonably be expected to cause some degree of symptoms and there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony.

The ALJ determined that Plaintiff's symptom testimony was "not entirely credible" because his symptom testimony contradicted his function report, was inconsistent with the medical record, and because Plaintiff failed to seek other types of work. Tr. 22–24.

The ALJ discredited Plaintiff's symptom testimony in part because it contradicted the abilities he reported in an earlier function report. Plaintiff completed a function report in August, 2014. Tr. 183–90. He indicated in the report that he engaged in cleaning and laundry that took him "all day" because he had "no energy to do anything." He prepared his own meals, went shopping by himself twice a month for things he needed and went to church on a regular basis. Tr. 186-87. He indicated that he drove but also that when going out he traveled as a passenger in a car. Tr. 186.

The ALJ found that inconsistencies between these statements and Plaintiff's hearing testimony "reflect[ed] negatively on his credibility surrounding the degree of limitation asserted in his testimony." Tr. 22. This was not a clear and convincing reason for discounting Plaintiff's testimony. Almost a year had passed between the date of Plaintiff's function report and his hearing testimony. At the time of the function report, Plaintiff was living on his own, whereas at the time of the hearing, he had moved back in with his family and his ex-wife was a "care-giver" for him. Tr.183, 47. The statements which the ALJ purported to find inconsistent reflected ongoing changes in Plaintiff's living situation and symptom severity that were supported by the record. The function report overall mirrors Plaintiff's hearing testimony regarding his vision impairments and his ability to function in public, handle stress, and interact socially. The ALJ's use of selective portions of Plaintiff's function report to discredit the entirety of his symptom testimony was improper. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *accord Garrison*, 759 F.3d at 1015. Alleged inconsistencies in Plaintiff's statements were

not a clear and convincing reason supported by substantial evidence for discrediting Plaintiff's testimony.

Plaintiff asserts that the ALJ also erred in discounting his symptom testimony as inconsistent with medical records. I agree. First, for the reasons discussed at **I.A.**, supra, the ALJ improperly discounted Plaintiff's testimony regarding his ability to correct his vision with the use of contact lenses.

Second, the ALJ asserted that the medical records "document few complaints and good response to the little treatment [Plaintiff] engaged in concerning PTSD." The ALJ cited a 2011 psychological examination report that indicated that Plaintiff's symptoms interfered less with his work than with his social and family relationships; a "confusing" discussion of Plaintiff's nightmare symptoms in that same report; and conservative "medical management" of his PTSD symptoms. Tr. 23, 284, 286. A thorough review of the record does not support the ALJ's reasoning. In 2011, Dr. Rex Turner diagnosed Plaintiff with PTSD; major depression, recurrent, severe, with agitation; generalized anxiety disorder, extremely severe, with panic attacks; and a GAF score of 52. Tr. 289. Dr. Turner noted that "[s]leep impairment was evident and reported." Tr. 286. Plaintiff reported chronic disturbing nightmares. Id.[4] Plaintiff's marriage subsequently ended due to his PTSD symptoms. Tr. 188. In early November 2013, Plaintiff's PTSD symptoms worsened and Plaintiff was prescribed sertraline, lorazepam and prazosin by his primary care physician. Tr. 318, 320. Plaintiff testified that he had tried multiple forms of counseling and non-medical therapy but without beneficial results. Tr. 46, 56.

In December of 2013, Plaintiff initiated care with VA psychiatrist, Dr. Higginbotham. Tr. 311. As detailed above, Dr. Higginbotham continuously prescribed a variety of medication

---

[4] Although Dr. Turner wrote "The veteran does not complain of troubling nightmares . . . ," the inclusion of the word "not" is obviously a scrivener's error as it is completely inconsistent with the remainder of his report.

combinations to combat Plaintiff's symptoms while taking into account side effects and Plaintiff's tolerances. While medication helped to a certain extent, Plaintiff continued to experience anxiety in public, sleep disturbances and medication side effects. Tr. 45, 62, 65-66.

Thus, contrary to the ALJ's assertions and the Commissioner's argument, the record does not support the conclusion that Plaintiff "sought relatively little treatment," or mere "medical management." Tr. 23, Def. Brief at 6-7. *See* SSR 16-3p, 96-7p (persistent attempts to obtain relief of pain or other symptoms such as increasing dosages, trials of a variety of treatment modalities to find those that are effective or without side effects generally support allegations that those symptoms are intense and persistent). Thus, this was not a legally sufficient reason for discounting Plaintiff's symptom testimony.

Lastly, the ALJ found Plaintiff's symptom testimony less than fully credible because he did not seek other types of work after he could no longer perform his job as a trauma surgical technician. Plaintiff argues that it is the combination of his impairments that are disabling. Reply at 9. Plaintiff worked, despite PTSD symptoms, prior to his alleged onset date. He testified that his employer was aware of his condition and accommodated him when he was overly stressed. Tr. 59-60. The addition of his significant visual impairment then precluded his ability to perform the job. Tr. 41, 348. Plaintiff testified that his PTSD symptoms have "severely" worsened over time, that he continues to experience sleep disturbances and anxiety in public. The ALJ failed to identify how these allegations of disabling symptoms were undermined by the fact that Plaintiff did not seek other types of work and, therefore, this reason was not a legally sufficient basis for discounting that testimony.

The ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony and remand is warranted.

# IV. <u>Lay Witness Testimony</u>

Lay testimony as to a claimant's symptoms or as to how an impairment affects a claimant's ability to work is competent evidence which an ALJ must consider. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir.2012) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1995); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993)). An ALJ who rejects the testimony of lay witnesses must provide reasons for doing so that are "germane" as to each witness. *Id*. Here, the ALJ discredited written statements from Plaintiff's ex-wife and parents. Tr. 22, 205-12, 233-34.

Plaintiff's ex-wife completed a third party function report dated August 23, 2014. Tr. 205-12. The ALJ noted that some of her comments corroborated Plaintiff's August 2014 function report and contradicted Plaintiff's hearing testimony. He then went on to reject her comments regarding his functioning as not supported by the medical evidence. Tr. 22. Agency regulations and Ninth Circuit law are clear that such a basis is legally insufficient. *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009)("Nor under our law could the ALJ discredit [claimant's wife's] lay testimony as not supported by medical evidence in the record")(citing *Smolen,* 80 F.3d at 1289 and SSR 88–13).

Plaintiff's parents submitted a letter in May 2015 describing their observations of the combined effects of Plaintiff's mental and visual impairments. Tr. 333-34. The ALJ rejected these statements as unsupported by the medical record and because they "reiterate[d] information" in the record and did not "add anything of substance." Tr. 22. As just discussed, this first reason fails to provide a legitimate basis for rejecting lay witness evidence.

The remaining reasons are also inadequate. Plaintiff's parents' statements add substantial insight into their son's impairments.[5] For example, they describe how, because of his poor vision and difficulties with concentration, Plaintiff sends them copies of letters and documents he receives so that they can read them to him. They also described the side effects Plaintiff experiences due to his psychiatric medications, including "amotivational symptoms, difficulty staying focused on tasks, and other psychophysiological manifestations." Tr. 233. They explained that he has experienced outbursts of anger, is emotionally withdrawn and has had "extreme difficulty in establishing and maintaining effective work and social relationships." Tr. 234. In addition to corroborating Plaintiff's testimony and the medical record, these opinions augment the record with more complete observations of the combined effects of Plaintiff's mental and visual impairments and the side effects of his treatment.

The ALJ failed to provide legally sufficient reasons for rejecting the lay witness evidence from Plaintiff's ex-wife and parents.

## V. __Remand__

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. 42 U.S.C. § 405(g); *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138–39 (9th Cir. 2011) (citing *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court

---

[5] These insights are especially persuasive in light of the fact that Plaintiff's father is a retired California state clinical social worker with multiple decades of experience providing services to veterans. Tr. 233

may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (*en banc*)).

Even if all of the requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Id.* at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts into serious doubt" whether the claimant is disabled under the Act. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

Here, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony, the opinion of Dr. Higginbotham, Plaintiff's VA disability rating, and lay witness statements. The ALJ also committed harmful error in failing to account for limitations

associated with Plaintiff's visual impairments in his RFC determination and the hypothetical presented to the VE. Thus, the first requisite is satisfied.

Nevertheless, I cannot conclude on this record that "further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. "The touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir.2015) (citations omitted). Thus, the court must assess whether outstanding issues remain *before* considering whether to credit erroneously rejected evidence as a matter of law. *Id.* Here, broad ranging errors in the Commissioner's decision precluded any meaningful assessment of the improperly discounted evidence and hampered full development of the record with regard to the functional limitations imposed by Plaintiff's PTSD symptoms. Filling in those gaps is essential, especially in a case involving an impairment as complex and varied as PTSD. In addition, further proceedings are required because the record is incomplete concerning the combined effects of Plaintiff's mental and visual impairments, which Plaintiff himself asserts is the basis for his claim. Reply at 9. The ALJ assessed no limitations related to Plaintiff's visual impairments as part of his RFC determination. The ALJ's hypothetical to the VE likewise omitted these limitations. Because the record is not fully developed with regard to the extent of the limitations imposed by Plaintiff's combined impairments, further investigation and assessment is required. Accordingly, remand for an award of benefits is not appropriate.

## Conclusion

For the reasons discussed above, the Commissioner's final decision was not based on substantial evidence or free of harmful legal error. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED for further proceedings. On remand, the ALJ must (1) at Step Two, deem Plaintiff's keratoconus a "severe" impairment; (2) in formulating the RFC,

expressly consider the limitations caused by this impairment both independently and in conjunction with Plaintiff's other medically determinable impairments;(3) credit the VA determination and Dr. Higginbotham's opinion or provided legally sufficient reasons for not doing so; (4) reassess Plaintiff's subjective symptom testimony and the evidence presented by lay witnesses in light of the reevaluated record and credit the evidence or provide legally sufficient reasons for not doing so; (5) reassess Plaintiff's RFC and develop the record as necessary based on the new RFC; (6) reassess whether Plaintiff is disabled within the meaning of the Act based on the fully developed and properly evaluated record.

DATED this 26th day of October, 2017.


_____/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge